UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

SKYLER JAMES FLORO,

              Plaintiff,

v.

AMANDA LITZSINGER, Corrections
Officer, and J. DUCHEK, Lieutenant
(EOCI),

              Defendants.

Case No. 2:17-cv-00993-AC

ORDER ON MOTION
FOR NEW TRIAL

ACOSTA, U.S. Magistrate Judge:

      Plaintiff Skyler James Floro brought this suit against Defendants Amanda Litzsinger and

James Duchek, alleging violations of his First and Eighth Amendment rights while he was in

custody at Eastern Oregon Correctional Institution ("EOCI"). Plaintiff's claims were tried to a

jury. On April 30, 2019, the jury rendered a verdict in favor of Plaintiff and against Defendant

Amanda Litzsinger,[1] awarding $150,000 in non-economic damages and $200,000 in punitive

damages, for a total sum of $350,000. Presently before the court is Defendant Litzsinger's Motion

---

[1] Plaintiff did not prevail on his First Amendment claim against Jason Duchek.

for New Trial or Remittitur pursuant to Federal Rule of Civil Procedure 59. (ECF No. 124.) In the motion, Litzsinger moves for a new trial or a reduction of jury's damage award to $210,000 total. For the following reasons, Litzsinger's motion is denied.

*Background*

Plaintiff is an inmate within the custody of the Oregon Department of Corrections, and in January 2017, he was housed at EOCI. Litzsinger is a Corrections Officer at EOCI. At trial, Plaintiff asserted that he was fearful of his fellow former gang members, and on January 9, 2017, he sought protective custody by refusing to "cell in"; that is, he refused to voluntarily enter his assigned cell. Plaintiff then was taken to the Disciplinary Segregation Unit ("DSU"). Litzsinger escorted Plaintiff to his punitive cell within the DSU. While being escorted by Litzsinger, several other DSU inmates asked Plaintiff why he was being placed in DSU, to which Litzsinger yelled out that he had "PC'd up." (Decl. Carl Post Resp. Mot. New Trial, Ex. 1 at 80:2-13, attaching Trial Tr. Apr. 29, 2019 ("Tr. Vol. I"), ECF No. 128-1.) Among inmates, someone who has "PC'd up," "dropped out," or sought protective custody, is someone who cooperates with the police or is a snitch. (Tr. Vol. I 80:18-21.) Additionally, Plaintiff's cellmate told him that Litzsinger had informed the cellmate that Plaintiff had PC'd up and was coming back to DSU. (Tr. Vol. I 80:14-17.) Approximately seven days later, Plaintiff was released from DSU. (Tr. Vol. I 81:10-11, 118:24-119:1.) After Plaintiff left DSU, he was assaulted because he requested protective custody and was labeled a snitch as a result of Litzsinger's statements. (Tr. Vol. I 81:9-16, 101:10-24; 109:4-13; 119:2-4.)

Litzsinger confirmed that if an inmate requests protective custody, such information should be treated as confidential for the safety of inmates and corrections officers, and she denied ever

calling an inmate a "PC case" or "dropout" in front of other inmates. (Tr. Vol. I 125:17-24.) Litzsinger testified that it was her practice not to talk to inmates while escorting inmates to cells in DSU. (Tr. Vol. I 132:23-133:6.) At trial, several other inmates testified that they had heard Litzsinger refer to inmates as PC cases or dropouts. Mr. Sackett testified that Litzsinger had called other inmates PC cases or dropouts on at least two other occasions. (Tr. Vol. I 147:11-149:6.) Mr. McNeil confirmed that Litzsinger had disclosed other inmates' PC status to other inmates. (Tr. Vol. I 162:20-23.) Mr. Benz testified that he learned that Plaintiff was a PC case from another inmate, and that Plaintiff's status was common knowledge in the unit where he was housed. (Tr. Vol. I 141:8-23.) McNeil also testified that while he was in DSU, he heard other inmates talking about Plaintiff being a dropout. (Tr. Vol. I 164:12-17.)

On July 13, 2017, Plaintiff was slashed by another inmate with a razor and punched while sleeping in his dormitory cell. (Tr. Vol. I 119:8-10.) Plaintiff described that the inmate hit him, dragged him off the bed, slashed his eyebrow with a razor blade, then punched him again. (Tr. Vol. I 86:19-22.) Plaintiff testified that he went unconscious and awoke to find the offending inmate sitting on his bed. (Tr. Vol. I 86:22-25.) Plaintiff feared for his life, and believes he was attacked because he was labeled a snitch. (Tr. Vol. I 87:2-4.)

Plaintiff testified that he has suffered emotionally as a result of Litzsinger's statements and being labeled a snitch, and he attempted suicide because he was so depressed. (Tr. Vol. I 90:9-23, 117:3-14.) Plaintiff stated that he continues to fear for his safety. Mr. Benz testified that Plaintiff was anxious and afraid; Mr. Sackett testified that he took Plaintiff under his wing because he is "a little guy," weighing only 120 pounds. (Tr. Vol. I, 141:24-142:2-8, 159:14-22.)

A jury trial commenced April 29, 2019. On April 30, 2019, the jury found that Litzsinger violated his Eighth Amendment rights and that he suffered noneconomic damages in the amount of $150,000, and that Plaintiff was entitled to punitive damages in the amount of $200,000.

## Legal Standards

A new trial may be granted after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1). The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980). Historically, the court has granted motions for new trial because, for example, the verdict was against the weight of the evidence, the damages are excessive, and the trial was unfair to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007); *VanValkenburg v. Oregon Dept. of Corr.*, Case No. 3:14-cv-00916-MO, 2017 WL 532950, at *3 (D. Or. Feb. 8, 2017). The Ninth Circuit has held that a new trial may be granted "'only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski*, 481 F.3d at 729 (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir.2000)).

When considering a Rule 59 motion, the court has "the duty[] to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990) (internal quotation omitted); *VanValkenburg*, 2017 WL 532950, at *3. Under federal law, a court may conditionally grant a defendant's motion for a new trial unless the plaintiff agrees to a reduced damages award,

also known as a remittitur. *VanValkenburg*, 2017 WL 532950, at *5; *Hetzel v. Prince William Cty., Va.*, 523 U.S. 208, 211 (1998); *see also Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993) (explaining that a court cannot order reduced damages without providing plaintiff with the option for a new trial on the issue of damages).

In general, a "motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under FRCP 59." *Morris v. Walgreen Oshkosh, Inc.*, Case No. 3:14-cv-01718-ST, 2016 WL 1704320, at *3 (D. Or. Apr. 18, 2016); *see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989) (explaining that Rule 59 applies to motions for a new trial and remittitur). In the Ninth Circuit, when the jury's verdict is challenged as excessive, the court affords "'substantial deference to a jury's finding of the appropriate amount of damages.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008) (quoting *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996)). The court will uphold the jury's verdict unless "the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Del Monte*, 95 F.3d at 1435.

### Discussion

Litzsinger argues that remittitur is appropriate because the jury's verdict was excessive. Litzsinger suggests that $86,000 in noneconomic damages and $124,000 in punitive damages is appropriate. Litzsinger argues that Plaintiff did not present any evidence at trial to support a noneconomic damages award in the amount of $150,000. Litzsinger highlights that Plaintiff sought just $64,000 in noneconomic damages in his First Amended Complaint filed just days before trial. (First Am. Compl., ECF No. 106.)

In response, Plaintiff contends that the jury was properly instructed on damages and what factors to consider in determining the amount of noneconomic and punitive damages. Plaintiff argues that the jury award is supported by the evidence and is neither speculative nor excessive. Plaintiff is correct.

Litzsinger did not object to the jury instructions at trial and does not challenge them in the current motion. (Tr. Vol. I 194:22-195:17); *see also Harper*, 533 F3d at 1021 ("If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict"). The jury is presumed to have followed the instructions provided to them. Plaintiff's testimony alone is enough to substantiate the jury's award of noneconomic damages. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003) (holding plaintiff's testimony was sufficient to support claim for emotional distress damages).

At trial, Plaintiff testified that he feared for his life, that he was anxious, and that he was assaulted in July 2017 as a result of being labeled a PC case by Litzsinger. Plaintiff described the emotional toll that Litzsinger's statements to other inmates had caused him, casting him as a snitch and causing him to sink into depression and ultimately attempt suicide. The jury obviously was moved by his testimony.

The jury also was able to evaluate the credibility of the witnesses. Consistent with its Rule 59 duty to weigh the evidence, the court also reviewed the exhibits and carefully observed and listened to the witnesses as they testified during trial. The jury's verdict falls within a range that is consistent with the evidence presented at trial.

And, as Plaintiff correctly highlights, Litzsinger did not object to the jury instructions concerning how noneconomic damages were to be calculated, and the jury is presumed to have followed those instructions. Based on the substantial evidence presented at trial, the court cannot conclude that the jury's award of noneconomic damages was "grossly excessive or monstrous" or that it was based on "speculation or guesswork." *See Zhang*, 339 F.3d at 1041 (finding jury's award of emotional distress damages of $223,155 in discrimination case was neither "grossly excessive or monstrous" where plaintiff testified he suffered humiliation and harm; upholding trial court's denial of motion for new).

Litzsinger does not advance a separate argument concerning punitive damages in the motion for new trial or remittitur, but asserts that the punitive damages award is excessive, suggesting instead a sum of $124,000. Substantial evidence supports the jury's verdict. The jury heard evidence based upon which it could find malice or reckless indifference to his federally protected rights. Litzsinger testified that she knew an inmate's protective status should be kept confidential, yet Plaintiff and other witnesses testified that she disclosed Plaintiff's status, as well as that of other inmates. Based on this evidence, the jury could reasonably find that Litzsinger's conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights, and that $200,000 was an appropriate amount to punish her, and to deter her and other from engaging in similar acts in the future. Accordingly, substantial evidence supports the jury's verdict, the award of noneconomic and punitive damages is not grossly excessive or monstrous, and the jury did not improperly speculate when reaching the damages award.

*Conclusion*

Based on the foregoing, Plaintiff's Motion for New Trial or Remittitur (ECF No. 124) is DENIED.


IT IS SO ORDERED.

DATED this 27th day of August, 2019.

                                                    JOHN V. ACOSTA
                                              United States Magistrate Judge